Yang Wenyao CA SBN 348833
SHINEVIN & YANG PC
8140 Weirick Road ,
Corona CA, 92883
Tel: (626) 766-9272
attorney@shinevinyang.com

Attorney for Petitioner Zhang Juan

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**(EASTERN DIVISION)**

ZHANG JUAN,
Petitioner,

VS.

JAMES JANECKA, Warden, Adelanto ICE Processing Center, in his official capacity; THOMAS P. GILES, Field Office Director, Los Angeles Field Office, Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement, in his official capacity; DAVID J. VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement, in his official capacity; MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security, in his official capacity; TODD BLANCHE, Attorney General of the United States, in his official capacity;
U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS");
U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT ("ICE");
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW ("EOIR"),
Respondents.

Case No.: 5:26-cv-06092

**PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2241) AND COMPLAINT FOR INJUNCTIVE/DECLARATORY RELIEF**

Assigned to:
Dept:

Petitioner Zhang Juan ("Petitioner"), by and through counsel, alleges as follows:

## I. INTRODUCTION

1. Petitioner Zhang Juan (A# 240-799-284) is a 43-year-old citizen of the People's Republic of China who was lawfully inspected and admitted to the United States at Los Angeles International Airport on May 14, 2022, as a B-2 visitor. She has lived openly in Monterey Park, California, ever since. About one month after her arrival, in June 2022, she filed an affirmative application for asylum, withholding of removal, and protection under the Convention Against Torture (Form I-589) with U.S. Citizenship and Immigration Services ("USCIS"), based on the forced abortion she suffered at the hands of family-planning officials in China. USCIS scheduled her asylum interview for October 6, 2026 at 8:00 a.m.

2. Petitioner did exactly what the government asked of her. She appeared at the USCIS asylum office on time, with an interpreter, to be interviewed on her application. Instead of the interview that USCIS itself had scheduled, she was arrested on the spot by officers of U.S. Immigration and Customs Enforcement ("ICE"), served with a Notice to Appear charging only that she had overstayed her visa, and transported to the Adelanto ICE Processing Center, where she remains.

3. Petitioner's detention is unlawful for several independent reasons. First, because Petitioner was admitted to the United States and no mandatory-detention ground under § 1226(c) exists, her detention is governed by 8 U.S.C. § 1226(a), which entitles her to an individualized custody determination and to release on bond or conditional parole; she is not an "applicant for admission" subject to 8 U.S.C. § 1225(b)(2)(A), as the Ninth Circuit, the Fifth Circuit, and Respondents' own Notice to Appear all confirm. Second, Petitioner was arrested without a warrant although she posed no conceivable risk of escape — she had come to the government's own office at the government's invitation — in violation of 8 U.S.C. § 1357(a)(2), 8 C.F.R. § 287.8(c)(2)(ii), and 8 C.F.R. § 287.3, and § 1226(a) authorizes detention only "[o]n a warrant issued by the Attorney General." Third, no officer or judge has ever made an individualized determination that Petitioner is a flight risk or a danger to anyone, and her continued detention without any such finding violates the

procedural and substantive guarantees of the Due Process Clause of the Fifth Amendment. Fourth, using a USCIS asylum interview as the occasion to arrest and detain the very applicant the agency summoned, thereby stripping her of the non-adversarial adjudication that Respondents' own regulations guarantee, is arbitrary and capricious agency action under the Administrative Procedure Act ("APA").

4. Petitioner asks this Court to order her immediate release, or in the alternative to order a custody hearing within seven days at which the government bears the burden of justifying her detention by clear and convincing evidence, and to enjoin Respondents from transferring her out of this District or re-detaining her without notice and a hearing while this action is pending.

## II. REQUIREMENTS OF 28 U.S.C. § 2243

5. The habeas statute requires that this Court adjudicate this case quickly. Upon receipt of the petition, the Court must either grant the writ or issue an order to show cause to Respondents "forthwith," unless it appears from the petition that the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause issues, Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* This District's General Order No. 26-05, § 2 (Apr. 1, 2026), ordinarily sets the answer to a § 2241 immigration petition seven calendar days after the Clerk's scheduling notice, subject to modification by the assigned judge. Because Petitioner has been confined for more than a week without any custody review, she asks the Court to accelerate that schedule and require a return within three days.

6. Courts have long recognized habeas corpus as "a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963). "The statute itself directs courts to give petitions for habeas corpus special, preferential consideration to insure expeditious hearing and determination." *Yong v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000) (quoting *Van Buskirk v. Wilkinson*, 216 F.2d 735, 737–38 (9th Cir. 1954)).

## III. JURISDICTION AND VENUE

7. This Court has jurisdiction under 28 U.S.C. § 2241 because Petitioner is in federal custody in violation of the Constitution, laws, and regulations of the United States. The Court also has jurisdiction under 28 U.S.C. § 1331 over Petitioner's federal claims; declaratory and further relief are authorized by 28 U.S.C. §§ 2201–2202, and the APA claim is pleaded under 5 U.S.C. §§

701–706. Nothing in 8 U.S.C. § 1226(e) bars this action: although that provision limits review of discretionary custody judgments, it does not preclude challenges to the statutory framework that governs a noncitizen's detention or to the constitutionality of that detention. *Jennings v. Rodriguez*, 583 U.S. 281, 295–96 (2018); *Demore v. Kim*, 538 U.S. 510, 516–17 (2003).

8. Venue is proper in this District under 28 U.S.C. § 2241(a) and § 1391(e) because Petitioner is detained at the Adelanto ICE Processing Center in San Bernardino County, within the Eastern Division of the Central District of California, and her immediate custodian, Respondent Janecka, is located here. *Rumsfeld v. Padilla*, 542 U.S. 426, 435, 443 (2004).

9. No statute requires exhaustion of administrative remedies before a noncitizen may challenge the lawfulness of her immigration detention under § 2241; exhaustion is prudential and should be excused here. An immigration judge's custody redetermination under § 1226(a) cannot adjudicate the legality of ICE's warrantless arrest or its failure to follow its own regulations, cannot resolve Petitioner's constitutional claims, and cannot provide the relief sought here, including protection against transfer and against re-detention without a pre-deprivation hearing. No custody determination has been communicated to Petitioner and no custody hearing has occurred, and each additional day of unlawful confinement inflicts irreparable harm. *See Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017); *Laing v. Ashcroft*, 370 F.3d 994, 998–1001 (9th Cir. 2004).

## IV. PARTIES

10. Petitioner Zhang Juan is a citizen and national of the People's Republic of China, born October 25, 1982. She is detained at the Adelanto ICE Processing Center, 10400 Rancho Road, Adelanto, California 92301.

11. Respondent James Janecka is the Warden of the Adelanto ICE Processing Center and is sued in his official capacity. He is Petitioner's immediate custodian.

12. Respondent Thomas P. Giles is the Director of the Los Angeles Field Office, Enforcement and Removal Operations ("ERO"), ICE, and is sued in his official capacity. The Los Angeles Field Office is responsible for ICE detention operations, custody determinations, transfers, and removal actions affecting noncitizens held at Adelanto.

13. Respondent David J. Venturella is the Acting Director of ICE and is sued in his official capacity. ICE is the component of the Department of Homeland Security responsible for Petitioner's arrest, detention, and custody.

14. Respondent Markwayne Mullin is the Secretary of the U.S. Department of Homeland Security ("DHS") and is sued in his official capacity. DHS is charged with the administration and enforcement of the Immigration and Nationality Act ("INA") and oversees ICE and USCIS.

15. Respondent Todd Blanche is the Attorney General of the United States and is sued in his official capacity. The Attorney General oversees the Executive Office for Immigration Review ("EOIR"), which conducts removal and custody redetermination proceedings.

16. Respondents DHS, ICE, and EOIR are the federal agencies responsible, respectively, for enforcing the immigration laws, for Petitioner's detention, and for administering the immigration courts.

## V. STATEMENT OF FACTS

### A. Petitioner's Lawful Admission and Life in California

17. On November 30, 2021, the U.S. Consulate General in Shanghai issued Petitioner a B1/B2 nonimmigrant visa valid through November 25, 2031. On May 14, 2022, Petitioner was inspected and admitted to the United States at Los Angeles International Airport as a B-2 visitor (I-94 No. 858213180A2), with authorization to remain until November 13, 2022.

18. Since her admission Petitioner has lived in Monterey Park, California. The California Department of Motor Vehicles issued her an identification card on June 4, 2022 (No. Y9283256). She has no criminal history in the United States or anywhere else. She has never been arrested, charged, or convicted of any offense.

19. Petitioner remained in the United States after her authorized period of stay expired because she fears return to China. In 2001, family-planning officials in Nantong, Jiangsu Province, discovered that she was pregnant with her second child, forced her into a vehicle, and took her to a hospital where she was subjected to a forced abortion of a three-month pregnancy against her will. Congress has declared that a person "who has been forced to abort a pregnancy . . . shall be deemed to have been persecuted on account of political opinion." 8 U.S.C. § 1101(a)(42)(B).

**B. Petitioner's Affirmative Asylum Application and the USCIS Interview**

20. On or about June, 2022, approximately one month after her arrival and well within the one-year filing period of 8 U.S.C. § 1158(a)(2)(B), Petitioner filed Form I-589, Application for Asylum and for Withholding of Removal, with USCIS. She also requested protection under the Convention Against Torture. USCIS accepted the application and assigned Petitioner alien registration number 240-799-284.

21. The affirmative asylum process is non-adversarial by regulation. An asylum officer "shall conduct the interview in a nonadversarial manner," 8 C.F.R. § 208.9(b), and must either grant asylum or refer the application to an immigration judge, 8 C.F.R. § 208.14(c). Although the regulations permit referral without an interview in specified circumstances, 8 C.F.R. § 208.9(a)(2), nothing in them contemplates summoning an applicant to an interview in order to arrest her. Petitioner's voluntary compliance with that appointment bears directly on whether the statutory conditions for a warrantless arrest could have been met.

22. USCIS scheduled Petitioner's asylum interview for October 6, 2026 at 8:00 a.m. at the USCIS asylum office in Orange County, California. The interview notice instructed Petitioner to appear and to bring an interpreter.

23. On the morning of October 6, 2026, Petitioner appeared at the asylum office on time, voluntarily, and accompanied by an interpreter, prepared to be interviewed on her application.

**C. The Warrantless Arrest at the Asylum Office**

24. Petitioner was not interviewed. Instead, ICE officers took her into custody at the asylum office. The officers did not show Petitioner any warrant of arrest and did not give her any document authorizing her arrest. To this day Petitioner has not received a Form I-200 Warrant for Arrest of Alien or any other arrest warrant, and upon information and belief none had been issued before she was seized.

25. Petitioner did not attempt to flee, resist, or evade the officers. She had traveled to the government's own office, at the government's direction, on the government's schedule, and had identified herself to the government's staff. No officer could reasonably have believed that she was "likely to escape before a warrant [could] be obtained." 8 U.S.C. § 1357(a)(2).

26. Later that day, at Santa Ana, California, a Supervisory Detention and Deportation Officer signed a Notice to Appear (Form I-862) charging Petitioner with removability under INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), for remaining in the United States longer than permitted after admission as a nonimmigrant. The Notice to Appear expressly states that Petitioner "ha[s] been admitted to the United States," and alleges that she "w[as] admitted to the United States at Los Angeles, California on or about May 14, 2022 as a nonimmigrant Visitor For Pleasure." It does not charge that she is an arriving alien or an alien present without admission or parole.

27. The Notice to Appear was served on Petitioner in person on October 6, 2026, with oral notice in Mandarin. Petitioner was presented with, and signed, a "Request for Prompt Hearing" waiving the ten-day notice period.

28. The Notice to Appear is the only document Petitioner has received from Respondents. She was not examined by an officer other than the arresting officer, 8 C.F.R. § 287.3(a); was not advised of the reasons for her arrest, of her right to counsel, or that her statements could be used against her, 8 C.F.R. § 287.3(c); and has never received a Form I-286 Notice of Custody Determination or any other communicated, individualized decision whether she would be continued in custody or released, which 8 C.F.R. § 287.3(d) requires within 48 hours of a warrantless arrest absent an emergency or other extraordinary circumstance. No emergency or extraordinary circumstance existed.

29. Petitioner was transported to the Adelanto ICE Processing Center. DHS filed the Notice to Appear with the Adelanto Immigration Court on October 8, 2026, and on October 9, 2026 the Immigration Court issued a Notice of Hearing setting a master calendar hearing for October 20, 2026 at 8:00 a.m. before Immigration Judge Jonathan Masaji Brent, to be conducted by internet-based video with Petitioner appearing from detention. EOIR's automated case information system confirms that the case is pending, that no decision has issued, and that the charging document is dated October 6, 2026.

30. No immigration judge has held a custody redetermination hearing for Petitioner, and no officer of ICE has made or communicated any individualized determination that Petitioner presents a risk of flight or a danger to the community. ICE has not set bond, has not informed Petitioner of

any right to request a bond redetermination, and has given her no explanation of the basis for her continued detention.

**D. Petitioner Is Neither a Flight Risk Nor a Danger**

31. Petitioner has no criminal record. She has lived at the same address in Monterey Park for more than four years. She affirmatively sought out the government to adjudicate her asylum claim, appeared for her interview, and has every incentive to attend her immigration court hearings, where she will pursue asylum, withholding of removal, and protection under the Convention Against Torture.

32. Petitioner has a committed relationship with Mein Nghe, a United States citizen who resides and works in Las Vegas, Nevada. Mr. Nghe has been employed continuously and has filed federal income tax returns reporting adjusted gross income of $34,053 (2023), $51,328 (2024), and $31,816 (2025). Mr. Nghe has offered to provide Petitioner with a home at his residence, to support her financially, to transport her to every ICE appointment and immigration court hearing, and to serve as obligor on any bond the Court or an immigration judge may require. *See* Declaration of Mein Nghe, filed herewith.

33. Detention is inflicting serious and irreparable harm on Petitioner. She is confined far from her home and community; she has been deprived of the asylum adjudication she waited more than four years to receive; and she must now prepare her asylum case from a detention center, on a compressed detained docket, without the ability to gather evidence or consult freely with counsel.

## VI. CLAIMS FOR RELIEF

### COUNT ONE

### Detention Is Governed by 8 U.S.C. § 1226(a), Not 8 U.S.C. § 1225(b)(2)(A) — Petitioner Is Entitled to an Individualized Custody Determination

34. Petitioner repeats and incorporates by reference all preceding paragraphs.

35. Section 1225(b)(2)(A) applies only to "applicant[s] for admission," a term the statute defines as "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). "Admission" means "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)

(A). Petitioner was inspected and admitted at Los Angeles International Airport on May 14, 2022. She is therefore not an applicant for admission, and § 1225(b)(2)(A) has no application to her.

36. The Ninth Circuit has so held. In *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026), the court rejected the government's and the Board of Immigration Appeals' expansive reading of § 1225(b)(2)(A) in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), held that noncitizens apprehended in the interior are "subject to the detention regime of § 1226, not § 1225(b)(2)(A)," and observed that "§ 1226(a) would continue to apply to aliens who are admitted into the United States and later become removable." Even the Fifth Circuit, which accepted the government's reading as to noncitizens who entered without inspection, recognized that "only § 1226(a) applies to admitted aliens who overstay their visas." *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). Respondents' own Notice to Appear concedes the dispositive fact: Petitioner "ha[s] been admitted to the United States." The Supreme Court's recent grant of certiorari on whether § 1225(b)(2)(A) mandates detention of noncitizens who "are present in the United States without having been admitted," *Rhoney v. Barbosa da Cunha*, No. 26-104 (U.S. Oct. 1, 2026), does not reach Petitioner, who was admitted.

37. Petitioner's detention is therefore governed by § 1226(a), under which the Attorney General "may continue to detain the arrested alien" or "may release the alien on" bond or conditional parole, 8 U.S.C. § 1226(a)(1)–(2), and under which a detained noncitizen is entitled to request a custody redetermination by an immigration judge, 8 C.F.R. §§ 236.1(d)(1), 1003.19, 1236.1(d)(1). Petitioner is not subject to mandatory detention under § 1226(c): she has no criminal history whatsoever, and nothing in the Notice to Appear identifies any § 1226(c) ground.

38. To the extent Respondents have detained Petitioner without an individualized custody determination on the theory that she is subject to mandatory detention, or have otherwise refused to afford her the process § 1226(a) and its implementing regulations require, her detention is without statutory authority and in violation of 8 U.S.C. § 1226(a) and 8 C.F.R. §§ 236.1(c)(8), 236.1(d), and 287.3(d). Judges of this District have repeatedly rejected the government's mandatory-detention theory and granted relief. *See, e.g.*, *Chen v. Janecka*, No. 5:26-cv-01280-DMG-AYP, ECF No. 12 (C.D. Cal. Apr. 3, 2026) (Gee, C.J.); *Saldana Guzman v. Noem*, No. 2:25-cv-09687-DMG-AGR, ECF No. 9 (C.D. Cal. Oct. 31, 2025); *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025); *see also Valdez Martinez v. Warden, Mesa*

*Verde Det. Facility*, No. 1:26-cv-01870-KES-EPG, ECF No. 12, at 1–2 & n.1 (E.D. Cal. June 11, 2026) (ordering immediate release because detention under § 1225(b)(2)(A) was unauthorized and declining to recast the detention under § 1226(a), which respondents had not invoked).

**COUNT TWO**

**Warrantless Arrest and Detention Without a Warrant in Violation of 8 U.S.C. §§ 1226(a) and 1357(a)(2) and 8 C.F.R. §§ 287.3 and 287.8**

39. Petitioner repeats and incorporates by reference all preceding paragraphs.

40. Section 1226(a) authorizes the arrest and detention of a noncitizen pending removal proceedings "[o]n a warrant issued by the Attorney General." 8 U.S.C. § 1226(a); *see* 8 C.F.R. § 236.1(b)(1) (arrest under § 1226 is made "under the authority of Form I-200"); 8 C.F.R. § 287.5(e)(2) (limiting the officers who may issue such warrants). Congress permitted immigration officers to arrest without a warrant only where the officer "has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2); 8 C.F.R. § 287.8(c)(2)(ii). A person arrested without a warrant must be examined by another qualified officer unless none is readily available, 8 C.F.R. § 287.3(a); must be advised of the reasons for arrest and of the right to counsel, § 287.3(c); and must receive a decision whether she will be continued in custody or released, and whether a notice to appear and warrant of arrest will issue, within 48 hours absent an emergency or other extraordinary circumstance, § 287.3(d).

41. Petitioner was arrested without a warrant. The "likely to escape" requirement could not have been satisfied: Petitioner had presented herself at a federal office, at a time and place chosen by the federal government, to pursue a benefit from the federal government, and had identified herself to the government's staff. The government knew exactly who she was, where she lived, and where she would be at 8:00 a.m. on October 6, 2026 — it had told her to be there. An officer who wished to obtain a warrant had every opportunity to do so in advance. Respondents also failed to comply with the post-arrest examination, advisal, and 48-hour custody-determination requirements of § 287.3: the Notice to Appear is the only document Petitioner has ever received.

42. Because Petitioner was arrested in violation of § 1357(a)(2) and the governing regulations, and because no warrant authorized her detention under § 1226(a), her custody was

unlawful at its inception and remains so. A warrant is a "necessary condition" of discretionary detention under § 1226(a), and courts in this Circuit have ordered the release of noncitizens detained without one. *See, e.g.*, *J.A.C.P. v. Wofford*, 2025 WL 3013328 (E.D. Cal. Oct. 27, 2025); *Valdez Martinez v. Warden, Mesa Verde Det. Facility*, No. 1:26-cv-01870-KES-EPG, ECF No. 10 (E.D. Cal. Apr. 22, 2026) (findings and recommendation), adopted in part on other grounds, ECF No. 12 (E.D. Cal. June 11, 2026); *A.B.D. v. Wamsley*, No. 6:25-cv-02014, 2026 WL 178306 (D. Or. Jan. 22, 2026); *Rosado v. Figueroa*, No. 25-cv-02157, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), report and recommendation adopted sub nom. *Rocha Rosado v. Figueroa*, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025). Respondents should be required to produce any warrant and to identify any independent lawful basis for continued custody; absent such a basis, release is required. Respondents' violation of their own binding regulations independently requires relief. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–68 (1954).

## COUNT THREE

### Violation of the Fifth Amendment — Procedural Due Process

43. Petitioner repeats and incorporates by reference all preceding paragraphs.

44. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that Clause protects." *Id.* at 690. What process is due is determined by weighing the private interest affected, the risk of erroneous deprivation under the procedures used and the value of additional safeguards, and the government's interest. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

45. Petitioner's interest in her physical liberty is of the highest order. The risk of erroneous deprivation is acute: she was seized without a warrant, without any pre-deprivation determination of flight risk or danger, and without the post-arrest review that Respondents' own regulations require, and she has now been held for more than a week with no individualized custody determination at all. The government's interest in detaining a woman with no criminal history, a fixed address, a United States citizen partner prepared to house and support her, and a pending asylum claim she is eager to pursue is minimal, and the cost of providing a prompt hearing is slight.

46. Judges of this District have held in closely analogous circumstances that the Due Process Clause requires notice and an individualized determination before a noncitizen is deprived of liberty, and that a post-deprivation bond hearing "cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty." *Chen v. Janecka*, No. 5:26-cv-01280-DMG-AYP, ECF No. 12, at 9 (C.D. Cal. Apr. 3, 2026) (quoting *E.A.T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025)). Chief Judge Gee concluded that "release from custody is the only means to provide complete relief for the ongoing constitutional violation and the absence of pre-deprivation process." *Id.* Where, as here, the government has detained a noncitizen without the process the Constitution requires, release is the appropriate remedy; alternatively, due process requires at minimum a prompt hearing at which the government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or a danger. *See Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011); *Hernandez v. Sessions*, 872 F.3d at 990–91 (requiring consideration of ability to pay and alternative conditions of release).

**COUNT FOUR**

**Violation of the Fifth Amendment — Substantive Due Process**

47. Petitioner repeats and incorporates by reference all preceding paragraphs.

48. Civil immigration detention is constitutionally permissible only when it bears a reasonable relation to a legitimate governmental purpose, such as preventing flight or protecting the community. *Zadvydas*, 533 U.S. at 690–91. Petitioner has never been found to present either risk, and the undisputed facts show she presents neither. Detaining her nonetheless — because she answered the government's summons to an asylum interview — is arbitrary and punitive civil confinement that serves no legitimate purpose, in violation of the Fifth Amendment.

**COUNT FIVE**

**Administrative Procedure Act, 5 U.S.C. § 706(2) — Alternative Claim for Failure to Follow Mandatory Arrest and Custody Procedures**

49. Petitioner repeats and incorporates by reference all preceding paragraphs.

50. Congress provided that "[a]ny alien who is physically present in the United States . . . may apply for asylum." 8 U.S.C. § 1158(a)(1). Petitioner invoked that process and voluntarily attended the interview USCIS scheduled. Respondents arrested and continue to detain her without satisfying the mandatory arrest and custody requirements of 8 U.S.C. §§ 1226(a) and 1357(a)(2) and 8 C.F.R. §§ 287.3 and 287.8, as alleged above.

51. In the alternative, and to the extent Respondents' conduct constitutes final agency action for which there is no other adequate remedy in a court, 5 U.S.C. §§ 701(a), 704, Petitioner seeks review of that legal noncompliance — not of any discretionary bond assessment — as action that is arbitrary, capricious, an abuse of discretion, and not in accordance with law. 5 U.S.C. § 706(2)(A). No immigration judge has authority to review the lawfulness of ICE's arrest or its failure to follow its own regulations.

## VII. PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

A. Assume jurisdiction over this matter;

B. Issue an order to show cause "forthwith" pursuant to 28 U.S.C. § 2243, requiring Respondents to file a return within three days;

C. Order Respondents to produce, within three days, the Form I-200 (if any), Form I-213, Form I-286 (if any), and all other records of Petitioner's arrest and custody determination;

D. Declare that Petitioner is not subject to detention under 8 U.S.C. § 1225(b)(2)(A); that her detention is governed by 8 U.S.C. § 1226(a); and that her warrantless arrest and continued detention violate 8 U.S.C. §§ 1226(a) and 1357(a)(2), 8 C.F.R. §§ 287.3 and 287.8, the Fifth Amendment, and, in the alternative, the APA;

E. Grant the writ of habeas corpus and order Respondents to release Petitioner forthwith on her own recognizance or on reasonable conditions of supervision;

F. In the alternative, order Respondents to provide Petitioner, within seven days, a custody hearing before an immigration judge at which the government bears the burden of proving by clear and convincing evidence that she is a flight risk or a danger to the community, and at

which the immigration judge must consider her ability to pay and alternative conditions of release, and order her release if no such hearing is held within that time;

G. Enjoin Respondents, during the pendency of this action, from transferring Petitioner out of the Central District of California and from removing her from the United States;

H. Enjoin Respondents from re-detaining Petitioner after her release without prior written notice and a pre-deprivation hearing at which the government bears the burden of proof by clear and convincing evidence;

I. Order Respondents to return all property and documents taken from Petitioner upon her arrest;

J. Award Petitioner reasonable attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

K. Grant such other and further relief as the Court deems just and proper.

Dated: October 15, 2026

Respectfully submitted,

Yang Wenyao

Yang Wenyao, Esq. (SBN 348833)

SHINEVIN & YANG PC

8140 Weirick Road, Corona, CA 92883

Tel: (626) 766-9272 | attorney@shinevinyang.com

Attorney for Petitioner Zhang Juan

## VERIFICATION

I, Yang Wenyao, am the attorney for Petitioner Zhang Juan. Petitioner is detained at the Adelanto ICE Processing Center and is unable to execute this verification personally without delay that would prejudice her. I have prepared this Petition on her behalf pursuant to 28 U.S.C. § 2242 based on my interviews with Petitioner and her family, my review of the documents in her file, including her passport and visa, her California identification card, her Form I-589, the Notice to Appear dated October 6, 2026, and the Notice of Hearing dated October 9, 2026. I declare under

penalty of perjury under the laws of the United States that the factual allegations in this Petition are true and correct to the best of my knowledge, information, and belief.

Executed on October 15, 2026, at Corona, California.

Yang Wenyao

Yang Wenyao, Esq.